Antonio **ZITO**

v.

Monte **MOUTAL**, Acting **District Director**, **United States Immigration and Naturalization Service**, Chicago, Illinois.

No. 59 C 112.

United States District Court
N. D. Illinois.

March 31, 1959.

Frank R. Petrone, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty., Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

This is an action to review an order of deportation in which the plaintiff seeks the following relief: (1) a declaration that he is not a deportable alien under the provisions of 8 U.S.C.A. § 1251(a) (4); (2) a declaration that an order for the deportation of plaintiff is null and void; and (3) a mandatory injunction to compel the defendant to present for hearing plaintiff's petition for naturalization. The cause was originally before this court on plaintiff's motion for a preliminary injunction. Upon the defendant's assurance to the court that the plaintiff would not be deported immediately, a decision on the motion was held in abeyance pending the filing of cross-motions for summary judgment. These motions have now been filed, and, for the reasons which follow, I am of the opinion that plaintiff's motion for summary judgment must be granted.

There is no dispute as to the material facts in this case. Plaintiff is an alien who has lived in the United States for approximately 36 years. In 1941 he pleaded guilty to a twelve count indictment which charged conspiracy and eleven substantive violations of the In-

ternal Revenue Act of 1939, 26 U.S.C.A. § 1 et seq., pertaining to distilled spirits. He was sentenced to imprisonment for eight years and fined $12,000. In 1944 plaintiff was released on parole and in 1949 he was discharged from parole.

On October 21, 1954, plaintiff filed with the United States Immigration and Naturalization Service (hereafter "Service") an application to file a petition for naturalization. At that time, and twice thereafter, he informed the Service of his criminal record. After examination, plaintiff's application was granted and, on September 25, 1956, plaintiff filed a petition for naturalization in the United States District Court for the Southern District of Illinois. The petition is still pending in that court.

On November 24, 1957, the Service initiated deportation proceedings against the plaintiff pursuant to 8 U.S.C.A. § 1251(a) (4), which provides for the deportation of any alien

"* * * who at any time after entry is convicted of two crimes involving moral turpitude, *not arising out of a single scheme of criminal misconduct* * * *." (Emphasis added.)

Deportation was sought because the plaintiff had been convicted of the offenses stated in counts six and eleven of the indictment, which offenses, according to the Service, did not arise out of a single scheme of criminal misconduct. Count six charged that the plaintiff and others, on September 18, 1940,

"* * * did unlawfully, knowingly and wilfully remove, deposit and conceal goods and commodities, to wit, two hundred gallons of alcohol, for and in respect whereof a tax was then and there imposed, with intent to defraud the United States of such tax * * *."

Count eleven charged that the plaintiff and others (the same persons named in count six), on September 9, 1940,

"* * * *(the exact date thereof being to the Grand Jurors unknown)* * * * did unlawfully, knowingly and wilfully remove, deposit and conceal goods and commodities, to wit, fifty gallons of non-tax-paid alcohol, *(the exact amount of said non-tax-paid alcohol being to the Grand Jurors unknown),* for and in respect whereof a tax was then and there imposed, with intent to defraud the United States of such tax * * *." (Emphasis added.)

Thereafter, a hearing was held before a Special Inquiry Officer. In support of the Service's claim that the plaintiff had been convicted of two offenses not arising out of a single scheme of criminal misconduct, the Examining Officer introduced into evidence a certified copy of the indictment, judgment and commitment. The Service then rested its case. Thereupon, the plaintiff rested his case without presentation of evidence. The remainder of the hearing was devoted to plaintiff's application for discretionary suspension of deportation. After the hearing, the Special Inquiry Officer, in a written opinion, found that the plaintiff had been convicted of two offenses not arising out of a single scheme of criminal misconduct. He denied plaintiff's application for discretionary relief and ordered that the plaintiff be deported. Plaintiff appealed, and the Board of Immigration Appeals (hereafter "Board") sustained the order.

In his complaint, plaintiff asserts that he is not deportable because (1) count six of the indictment did not allege an offense; (2) assuming that count six did allege an offense, that offense and the one alleged in count eleven arose out of a single scheme of criminal misconduct; and (3) he did not receive a full and fair hearing on his application for discretionary suspension of deportation. With regard to this last reason, plaintiff contends that the decisions of the Special Inquiry Officer and the Board are ambiguous in that it cannot be determined whether the basis for denial of relief was statutory ineligibility or exercise of discretion. Plaintiff states that he will file with the Board a motion for reconsideration and clarification of the

opinions. Accordingly, I conclude that the issue of full and fair hearing is not before the court at this time and it will not be considered further in this memorandum.

It has already been noted that this case is presented to the court on cross-motions for summary judgment. In his motion and in the briefs submitted in support thereof, plaintiff does not reiterate the assertion that count six is fatally defective. He argues only that the offenses upon which the order of deportation was based arose out of a single scheme of criminal misconduct. In order fully to evaluate this argument, it is necessary to set out the substance of the entire indictment:

| Count | Date of Offense | Substance of Offense | Number of Gallons of Alcohol | Section of I.R.C. 1939 Violated |
|-------|-----------------|----------------------|------------------------------|----------------------------------|
| 1 | Sept. 18, 1940 | Unlawful Possession | 200 | 2803(a) |
| 2 | Same | Same | 20 | 2803(a) |
| 3 | Same | Removal to Place Other Than Bonded Warehouse | 200 | 2913 |
| 4 | Same | Concealment of Spirits Unlawfully Removed | 200 | 2913 |
| 5 | Same | Same | 20 | 2913 |
| 6 | Sept. 18, 1940 | Removal, Deposit & Concealment with Intent to Defraud | 200 | 3321 |
| 7 | July 15, 1940* | Unlawful Possession | 50* | 2803(a) |
| 8 | Aug. 15, 1940* | Same | 50* | 2803(a) |
| 9 | Sept. 9, 1940* | Unlawful Transportation | 50* | 2803(a) |
| 10 | Same* | Same | 50* | 2803(a) |
| 11 | Same* | Removal, Deposit & Concealment with Intent to Defraud | 50* | 3321 |
| 12 | | Conspiracy | | |

Count twelve alleges that the defendant and others, from April 1, 1938, to the date of the presentment, engaged in a continuing conspiracy to commit "divers" offenses: the "several" offenses alleged in counts one through eleven and other similar offenses. Count twelve alleges twenty overt acts which were done " * * * in pursuance of, in furtherance of, and to effect the objects and purposes of said * * * conspiracy * * *." Overt acts number 1, 2, 3, 4, 5 and 13 refer to the date and place alleged in count six of the indictment; acts number 4 and 14 refer to the date and place alleged in count eleven; and act number 11 refers to the date alleged in count eleven.

Two issues are presented to the court: (1) what is the correct interpretation of the phrase "not arising out of a single scheme of criminal misconduct" contained in 8 U.S.C.A. § 1251(a) (4); and (2) is the order of deportation based on reasonable, substantial and probative evidence?

* In counts so marked, the exact dates and amounts of alcohol were unknown.

*Interpretation of Section 1251(a) (4)*

 Emphasizing the fact that count twelve alleges a conspiracy to commit the offenses alleged in counts six and eleven, plaintiff contends that these offenses arose out of the scheme or conspiracy and, therefore, that they arose out of a single scheme of criminal misconduct. In support of this contention, plaintiff cites numerous conspiracy cases which do not involve deportation. In addition, plaintiff relies upon Jeronimo v. Murff, D.C.S.D.N.Y.1957, 157 F.Supp. 808. In the Jeronimo case, the issue was whether the plaintiff had been convicted of two offenses not arising out of a single scheme of criminal misconduct. It was undisputed that he had been found guilty of five counts of grand larceny and one count of conspiracy to commit grand larceny. The conspiracy was alleged to have existed continuously from March 1, 1947, to January 7, 1949. The conspiracy consisted of a scheme to defraud the city of New York by making fraudulent claims for payment for labor and materials furnished to New York pursuant to certain contracts. The date of each larceny was within the period charged in the conspiracy count and it was clear that the larcenies were integral parts of the conspiracy. Further, it was alleged in the conspiracy count that the larcenies were connected together and constituted part of a common scheme and plan. In light of these facts, the court held that the larcenies (which were relied upon as a basis for deportation) arose out of a single continuing criminal enterprise and that there was no substantial evidence to support the Board's conclusion that the larcenies arose out of separate schemes of criminal misconduct. The court rejected the defendant's contention that separate crimes do not arise out of a single scheme of criminal misconduct, unless committed pursuant to a single sustained criminal impulse. At page 815, the court observed:

> "The statute reads: 'not arising out of a single scheme of criminal misconduct.' It does not read: 'not arising out of a single act or single transaction.' * * *

> "* * * In a particular situation, the circumstance that the defendant committed a number of different crimes at or about one time as the result of the same criminal impulse or on one occasion in the course of the same transaction or episode, may be probative of the existence of a single scheme. But it does not follow that the existence of the same criminal impulse or the same transaction are indispensable prerequisites to the proof of a single scheme.

> "Other evidentiary facts may convincingly establish a single scheme. The initial formulation of the same subsisting fundamental object and purpose; the utilization of precisely the same methods and procedures in each of a series of successive situations to accomplish the original objective; the continuously interacting relationship and activities of the same persons who originated and launched the project; the victimizing of the same person through all of the acts—such evidentiary facts may, in the aggregate, demonstrate the existence of a single criminal enterprise, project and undertaking. Such is the case at bar.

> "The Supreme Court has plainly indicated that a deportation statute should be so interpreted as to resolve any doubts in favor of the alien."

Accordingly, the court granted plaintiff's motion for summary judgment.

In the instant case, the Special Inquiry Officer declined to follow Jeronimo because it was decided by a District Court in New York and was not binding in this district (parenthetically, it may be noted that the Special Inquiry Officer showed no reluctance to rely on a case decided in the District of New Jersey in rejecting plaintiff's contention that count six did not allege an offense). The Board, however, squarely faced the prob-

lem and concluded that the Jeronimo case incorrectly interpreted the law. The Board stated:

"Jeronimo appears to prevent the use of convictions arising out of a 'single criminal enterprise' without regard to the *time* which has elapsed between the criminal acts." (Transcript, p. 5.) (Emphasis added.)

" * * * The cases except for Jeronimo have refused to find the existence of a 'single scheme' unless one act was involved; or those which were done were so related in *time and purpose* as in reality to constitute but one separate episode. * * *

"We conclude that this record establishes the existence of two independent criminal acts so separated by *time* that they constitute individual episodes and do not constitute a single scheme of criminal misconduct." (Transcript, p. 8.) (Emphasis added.)

It should be noted that "the cases" referred to by the Board are either Board decisions or *obiter dictum* from cases which are distinguishable on their facts from the case at bar. See Fitzgerald ex rel. Miceli v. Landon, 1 Cir., 1956, 238 F.2d 864; Chanan Din Khan v. Barber, D.C.N.D.Cal.1957, 147 F.Supp. 771, affirmed 9 Cir., 1958, 253 F.2d 547, certiorari denied, 1958, 357 U.S. 920, 78 S. Ct. 1361, 2 L.Ed.2d 1364.

In his brief in support of his motion for summary judgment, the defendant does not expressly assert that Jeronimo incorrectly states the law. Rather, the defendant attempts to distinguish Jeronimo on its facts by noting (1) that in Jeronimo, the indictment alleged that the larcenies were part of a common scheme; (2) that in the instant case, such an allegation is absent; (3) that in Jeronimo, the plaintiff testified that the larcenies were part of one scheme; and (4) that in the instant case, the plaintiff did not testify at all. Although these factual distinctions exist, they are irrelevant to a consideration of whether the existence of a single sustained criminal impulse or single criminal episode is a prerequisite to the existence of a single scheme of criminal misconduct.

In addition, the defendant makes the following argument in support of his contention that the offenses charged in counts six and eleven did not arise out of a single scheme of criminal misconduct: (1) the conspiracy to commit the offense charged in count six and the offense itself arose out of the same scheme of criminal misconduct; (2) the conspiracy to commit the offense charged in count eleven and that offense also arose out of the same scheme of criminal misconduct; (3) these substantive offenses are separate and distinct crimes; (4) therefore, it must be presumed, absent a showing to the contrary, that the final objective of each offense was different; and (5) consequently, the crimes could not have arisen out of a single scheme of criminal misconduct. These contentions are patently incorrect. It is true that count twelve alleges a conspiracy to commit "divers" or "several" offenses. However, the defendant overlooks the important fact that the offenses charged in counts six and eleven are of the same type (indeed, even if deportation were predicated upon the offenses charged in counts six and, for example, ten, the offenses would have a common subject matter: the illegal exercise of dominion over distilled spirits). This fact refutes defendant's contention that it must be presumed that the object of each crime was different. If any presumption is to be made, it is that the object of each crime was the same.

However, to dispose of these contentions is not to dispose of this case. The court is still confronted by the conflicting views announced in Jeronimo and in the opinion of the Board. The result of Jeronimo is that deportation may not be predicated upon offenses which are part of a single continuing criminal enterprise even though the offenses are separated by time. The rationale of the Board's decision is that offenses do not arise from a single scheme of criminal misconduct unless they are part of a

single criminal episode; and, that in order to be part of a single criminal episode, they must be related in time and purpose. That the Board uses the word "episode" in a limited sense is manifest from its examples of offenses which do arise from a single scheme of criminal misconduct: counterfeiting and possession of counterfeit money; indecent fondling of two minors at the same time; and breaking and entering a bank and assault upon the bank watchman.

■ In its written opinion, the Board asserts that the statute in question should be interpreted to include the greatest number of twice-convicted aliens. In support of this assertion, the Board relies upon the legislative history of § 1251(a) (4). Prior to the enactment of this section in its present form, the law was that a twice-convicted alien could not be deported unless he had been confined for a year or more on each conviction. Section 1251(a) (4) eliminated this requirement and thereby broadened the class of deportable persons. However, § 1251(a) (4) also added the limitation that the offenses not arise out of a single scheme of criminal misconduct. The Board reasons that, because Congress intended to broaden the class of deportable persons, the limitation should be construed so as to apply to the smallest number of twice-convicted aliens. So to construe the limitation would, in my opinion, violate the well-settled rule that deportation statutes must be construed so as to resolve all doubts in favor of the alien. To construe the limitation as applying only to a single criminal "episode" is not only to resolve all doubts against the alien but also to read into the limitation a word which it does not contain. The statute does not include the word "episode"; rather, it uses the phrase "single scheme of criminal misconduct." The word "scheme," although limited by the word "single," is broader than the Board's definition (by example) of the word "episode." I conclude that the Board has erroneously interpreted the statute in question, and that the

proper interpretation is set forth in the Jeronimo case.

*Substantiality of Evidence*

■■ However, regardless of which interpretation of the statute is correct, I am of the opinion that the administrative record discloses a lack of substantial evidence to support the order of deportation. Although neither party has raised the issue, it must be noted that 8 U.S.C.A. § 1252(b) (4) provides:

> "no decision of deportability shall be valid unless it is based upon reasonable, substantial and probative evidence."

I have found no case which attempts to define "reasonable, substantial, and probative evidence." However, those words are certainly as broad in scope as the words "substantial evidence." In National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 299–300, 59 S.Ct. 501, 505, 83 L.Ed. 660, it was stated that substantial evidence is evidence which affords

> "* * * a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' * * * and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. * * * *"

If the administrative trier of fact draws inferences from the evidence, the inferences are conclusive and binding on a court of review if there is a substantial basis of fact for them. Carqueville v. Folsom, D.C.N.D.Ill.1958, 170 F.Supp. 777, affirmed Carqueville v. Flemming, 7 Cir., 263 F.2d 875. Further, with regard to inferences,

"* * * the test [of substantial evidence] is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or *which gives equal support to inconsistent inferences.*" Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 1938, 93 F.2d 985, 989. (Emphasis added.)

Accord: National Labor Relations Board v. A. S. Abell Co., 4 Cir., 1938, 97 F.2d 951, 958; National Labor Relations Board v. Union Pacific Stages, 9 Cir., 1938, 99 F.2d 153, 177. In Gulf Refining Co. v. Mark C. Walker & Son Co., 6 Cir., 1942, 124 F.2d 420, 425, at pages 425–426, certiorari denied, 1942, 316 U.S. 682, 62 S.Ct. 1268, 86 L.Ed. 1755, the court, in holding that the trial court should have directed a verdict in favor of the defendant, stated:

"* * * to submit to a jury a choice of probabilities is but to permit them to conjecture or guess, and where the evidence presents no more than such choice, it is not substantial."

The court then held that in such a case, the decision must be against the party who bears the burden of proof. In the instant case, the government bore the burden of proving, at the administrative hearing, that the plaintiff had been convicted of two crimes not arising out of a single scheme of criminal misconduct. Werrmann v. Perkins, 7 Cir., 1935, 79 F.2d 467; Tutrone v. Shaughnessy, D.C.S.D.N.Y.1958, 160 F.Supp. 433; United States ex rel. Belfrage v. Shaughnessy, D.C.S.D.N.Y.1953, 113 F.Supp. 56, affirmed 2 Cir., 1954, 212 F.2d 128. Compare, 8 U.S.C.A. § 1361, which places the burden of proof on the alien in certain cases not relevant to the instant proceeding.

In terms of the test set forth in Jeronimo, I am of the opinion that the government failed to sustain its burden of proof and that the order of deportation is not based on reasonable, substantial and probative evidence. The government merely introduced into evidence a certified copy of the indictment, judgment and commitment. The indictment charged a continuing conspiracy to commit the offenses alleged in counts six and eleven. These offenses were of the same type. In each case the victim was the same, and the same defendants participated in the commission of the offenses. The indictment is consistent with the formulation of the same subsisting fundamental object and purpose which pervades each of the offenses alleged in the indictment. Giving the government the benefit of every reasonable doubt (for purposes of discussion only), the most that can be said is that the evidence gives equal support to inconsistent inferences. Such evidence is not reasonable, substantial and probative.

In terms of the "single criminal episode" test which the Board applied, the evidence is also insufficient. As noted above, offenses do not arise from a single criminal episode unless they are related in *time* and *purpose*. The evidence in this case is consistent with relation in purpose, and the evidence does not support the conclusion that relation in time was lacking. The duration of a criminal episode must vary with the nature of the offenses committed. Not every offense can be committed quickly and in one place. Certainly, two offenses of removal, deposit and concealment of distilled spirits with intent to defraud the government could be committed in a single criminal episode spanning nine days. Of even greater importance is the fact that there is no reasonable, substantial and probative evidence of the date on which the offense alleged in count eleven was committed. That date is alleged to be September 9, 1940 "* * * *the exact date thereof being to the Grand Jurors unknown* * * *.*" (Emphasis added.) Hence the offense could have been committed on September 18, 1940, the date on which the offense charged in count six was committed. Again, the most that can be said is that the evidence gives equal support to conflicting inferences regarding the existence of a "single criminal episode." Accordingly, the

order of deportation is not based upon sufficient evidence, and plaintiff's motion for summary judgment must be granted.

I have already noted that plaintiff requests a mandatory injunction to compel the defendant to present for hearing plaintiff's petition for naturalization. There is nothing before the court which shows that the defendant, upon being apprised of the result of this case, will fail to present the petition. Accordingly, I decline to grant the mandatory injunction. Plaintiff also requests a declaration that he is not a deportable alien under the provisions of 8 U.S.C.A. § 1251(a) (4). Such a declaration would be too broad because it would go beyond the particular facts of the instant case.

In conformity with the views herein expressed, plaintiff's attorney is directed to prepare a judgment order granting plaintiff's motion for summary judgment, denying defendant's motion for summary judgment, and declaring that the order of deportation is null and void. The order should be submitted on notice on or before April 7, 1959.