MATTER OF S—

In DEPORTATION Proceedings

A–8089783

*Decided by Board April 19, 1962*

Recommendation against deportation—Section 241(b), 1952 act—Not effective
following resentencing for sole purpose of making recommendation—Depor-
tation—Section 241(a)(4)—Single scheme.

(1) A new Jersey court vacated two 1960 convictions; in lieu thereof ac-
cepted a plea of *non vult* to one; and, in an order dated March 30, 1961,
sentencing respondent to an indeterminate term, recommended against de-
portation. Since sole stated purpose of court's action was to correct failure
to make timely recommendation against deportation, such recommendation
is ineffective under section 241(b) of 1952 Act.
(2) Convictions for illegal possession of one person's automobile and for steal-
ing the automobile of another person on different dates permit the normal
inference that different crimes committed at different times against differ-
ent persons are not part of a single scheme of criminal misconduct. In the
absence of evidence to the contrary and in light of respondent's refusal to
testify such convictions establish deportability under section 241(a)(4) of
the 1952 Act.

CHARGES:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted
of two crimes after entry, to wit: grand larceny and grand
larceny.

Lodged: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted
of two crimes after entry, to wit: grand larceny and grand lar-
ceny; robbery while armed and possession of (stolen) motor
vehicle.

Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted
of two crimes after entry, to wit: grand larceny and grand lar-
ceny; robbery while armed and possession of (stolen) motor
vehicle, and robbery.

BEFORE THE BOARD

DISCUSSION: The case comes forward on appeal by the exam-
ining officer from the decision of the special inquiry officer dated
November 13, 1961, ordering the proceedings terminated.

The record relates to a native and citizen of Poland, 21 years old,
male, single, who last entered the United States on August 24, 1951,
ex USNS *Gen. R. M. Bladchford* and was admitted as an eligible dis-

placed person under section 2(c) of the Displaced Persons Act. The original order to show cause was served on the respondent on August 11, 1960, and charged him with being subject to deportation under section 241(a)(4) of the Immigration and Nationality Act in that after entry he had been convicted in the County Court of Hudson County of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, to wit, grand larceny on October 17, 1958 (Indictment 31-58), and grand larceny on April 14, 1960 (Indictment 28-59). The crimes were committed in July of 1958 and February 1959 and involved motor vehicles which were the property of different persons. On October 13, 1960, the special inquiry officer ordered the respondent deported on the charge stated in the order to show cause. On December 20, 1960, the special inquiry officer granted a motion to reopen, the motion containing a copy of an order entered by a judge of the Hudson County Court, Law Division, vacating and setting aside the plea, sentence, and thus, the conviction of one of the two offenses which formed the basis of the deportation proceeding.

At the reopened hearing the five convictions, all in the Hudson County Court, Jersey City, New Jersey, which were used to support the deportation charges had developed into the following postures:

(1) Indictment No. 31-58 charged the respondent with grand larceny in violation of N.J.S.A. 2A:119-2, committed July 18, 1958, in Bayonne, New Jersey, involving the theft of a motor vehicle of W—H—. The respondent was convicted upon his plea of *non vult* and on October 17, 1958, was sentenced to an indeterminate term at the New Jersey State Reformatory, sentence suspended and respondent placed on probation for a period of 3 years.

(2) Indictment No. 30-58, charged the respondent with possession of a stolen motor vehicle in violation of N.J.S.A. 2A:139-3, committed on July 17, 1958, involving the possession of the motor vehicle of R—S—, knowing the said motor vehicle to have been stolen. The respondent was convicted upon his plea of *non vult* and on October 17, 1958, was sentenced to an indeterminate term at the New Jersey State Reformatory, to run concurrently with the sentence imposed upon Indictment No. 31-58, *supra*, sentence suspended and respondent placed on probation for a period of 3 years.

(3) Indictment No. 27-59 charged the respondent with robbery while armed in violation of N.J.S.A. 2A:141-1, 2A:151-5, and 2A:90-2, committed February 13, 1959, involving the robbery, while armed, from C—G— of $500 in cash. The respondent was convicted on February 29, 1960, upon his plea of *non vult* solely of that portion of the charge which related to robbery, the "while armed" portion of the charge being dismissed, and was sentenced to the New Jersey State Reformatory for an indeterminate term not to exceed

5 years. On November 2, 1960, the sentencing judge vacated and set aside the respondent's plea of *non vult* and the sentence which had been imposed, reinstated the charge of robbery in violation of N.J.S.A. 2A:141-1 and directed the entrance of a plea of not guilty to the charge. On March 30, 1961, the judge directed the dismissal of the indictment.

(4) Accusation No. 85-60 charged the respondent with robbery in violation of N.J.S.A. 2A:141-1, committed February 13, 1959, in Jersey City, New Jersey, involving the robbery from C—G— of the sum of $500. On February 20, 1961, respondent entered a plea of *non vult* to the accusation, having waived indictment and trial, and on March 30, 1961, was sentenced to an indeterminate term to the New Jersey State Reformatory not to exceed 5 years, respondent to be given credit for time already spent at the New Jersey State Reformatory under Indictments No. 27-59 (*supra*) and No. 28-59 (*infra*) and the time which he had already spent in the Hudson County Jail. A motion made by respondent's counsel that the court recommend against deportation by reason of this conviction was opposed by a representative of the United States Attorney's office but was granted by the court. (Proceedings pursuant to Indictment No. 27-59 and Accusation No. 85-60 have been set out in direct succession in order to demonstrate the same crime against the same person was involved in both convictions.)

(5) Indictment No. 28-59 charged respondent with grand larceny of a motor vehicle in violation of N.J.S.A. 2A:119-2, committed on February 13, 1959, in Jersey City, New Jersey, involving the theft of a motor vehicle of J—A—. The respondent was convicted upon his plea of *non vult on* April 14, 1960, was sentenced to the New Jersey State Reformatory for an indeterminate term not to exceed 3 years, to run concurrently with the sentence imposed on Indictment No. 27-59, *supra*. On November 2, 1960, the sentencing judge vacated and set aside the respondent's plea of *non vult* and the sentence which had been imposed, reinstated the charge of theft of a motor vehicle in violation of N.J.S.A. 2A:119-2, directed the entrance of a plea of not guilty to the charge and on March 30, 1961, the same judge directed the dismissal of the indictment.

The County Court's order of November 2, 1960, vacating the convictions under Indictments No. 27-59 and No. 28-59 was made pursuant to the authority contained in N.J.R.R. 3:7-10(a) which provides:

A motion to withdraw a plea of guilty or of *nolo contendere* or of *non vult*, may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The examining officer in his brief has cited a number of New Jersey court cases in which the "manifest injustice" mentioned in N.J.R.R. 3:7-10(a) involved instances in which the defendant was denied due process in the State court, such as appearance or entering a plea without representation by counsel, lack of ability to comprehend the nature of the charges in the proceeding, and otherwise involving a violation of the defendant's constitutional rights. However, since such a motion is addressed to the discretion or conscious of the court, it cannot be said that the court lacked jurisdiction to grant the motion to vacate as pointed out by the special inquiry officer.[1] The difficulty arises not with the jurisdiction of the State court to grant the motion to vacate but the attempt of the State court to invade an area to which Congress has seen fit to erect or impose a federal standard in regard to recommendations against deportation as provided in section 241(b) of the Immigration and Nationality Act. We find that in intruding into this federal area, the court's action was ineffective for reasons which we will now develop.

Accusation No. 85-60 arose out of the same facts which constituted the basis for Indictment No. 27-59; i.e., the robbery of $500 cash from C—G— committed February 13, 1959, in the City of Jersey City, New Jersey. Indictment No. 27-59 had resulted in the respondent's conviction on his plea of non vult on February 29, 1960, to the indictment which related to robbery, the "while armed" charge being dismissed. Subsequently, on November 2, 1960, the sentencing judge vacated and set aside respondent's plea of non vult and the sentence which had been imposed, reinstated the charge of robbery in violation of N.J.S.A. 2A:141-1, directed the entrance of a plea of not guilty to the charge and on March 30, 1961, directed the dismissal of this indictment. Accusation No. 85-60 revived the charge which consisted of the same factual allegations, minus the "while armed" charge, to which respondent entered a plea of non vult on February 20, 1961, and on March 30, 1961, was given the same sentence of an indeterminate term at the New Jersey State Reformatory not to exceed 5 years to which he had previously been sentenced under Indictment No. 57-59; and the court, upon motion by counsel after due notice to the United States Attorney's office, granted the motion and recommended against deportation.

It is difficult to perceive how Accusation No. 85-60 can be divorced from No. 27-59, both alleging the same overt act and the same violation of law and involving the same defendant and the same victim. The "manifest injustice" referred to by Judge Duffy of the Hudson County Court in his order of November 2, 1960, that the defendant's plea of non vult heretofore entered on February 29, 1960, in response

---

[1] Matter of H—, 9—380; Matter of H—, 9—460.

to Indictments Nos. 27–59 and 28–59 and the sentences imposed as a result thereof on April 14, 1960, be vacated as if never entered was made for the specifically-stated reason that the court was not aware (at the time of first sentencing) that the defendant was subject to deportation as an alien, did not consider that the defendant was faced with additional penalty of deportation and that it would be manifestly unjust to subject the defendant to the additional penalty aforesaid. This reason alone, the added penalty of deportation and no other, is given in the order to constitute the "manifest injustice" in the order to vacate and set aside pursuant to R.R. 3:7–10(a).

This subject was considered by the Attorney General in *Matter of P—*, 9—293 (May 24, 1961). In that case the respondent was convicted of disorderly conduct in violation of section 722(8) of the Penal Law of New York in September 1954 and again in March 1959, both offenses involving moral turpitude. The 1959 conviction was set aside by the New York Trial Court on a writ of error *coram nobis* and on October 2, 1959, the respondent was retried and again convicted on his plea of guilty and at this second trial the court recommended against deportation. The question was whether the recommendation at this time of the court against deportation met the requirement of section 241(b) that to be effective it must be made "at the time of first imposing judgment or passing sentence." Reliance was had upon *United States ex rel. Piperkoff v. Esperdy*,[2] in which the court held that the *coram nobis* proceeding in that case had no effect for the purpose of section 241(b). The Attorney General interpreted the *Piperkoff* case to mean that the test to be applied under section 241(b) in *coram nobis* cases was whether the court's "sole basis" for granting *coram nobis* was to make the statutory recommendation against deportation; that the accused's motives or purposes in seeking *coram nobis* were immaterial, except insofar as they threw light upon the court's basis for vacating the conviction. After examining the record which showed (1) at the time of pleading guilty to the March 1959 conviction, the accused was not represented by counsel; (2) that as a result of the court's refusal of a request that the charges be translated into German, he was unable to understand the crimes against him; and (3) the conviction could result in his deportation; and that at the hearing only the first two grounds were urged, there being no mention made of deportation, the Attorney General found no difficulty in concluding that the opportunity to recommend against deportation was not the court's "sole basis" for vacating the March 1959 conviction; that it was clear that the court granted *coram nobis* because of a constitutional defect in the prior conviction.

---

[2] 267 F.2d 72 (C.A. 2, 1959).

In the present case, instead of the similar procedure of the writ of *coram nobis* which had been abolished under New Jersey practice, resort was had to R.R. 3:7–10(a) to correct "manifest injustice." The "sole basis" stated on the record by the court in granting the motion to vacate was because it was not aware that the defendant was subject to deportation and the motion was granted to avoid the additional penalty of deportation. The fact that thereafter the respondent was proceeded against by an accusation rather than by an indictment should not make any difference [3] in concluding that the recommendation against deportation was not made pursuant to section 241(b) which enunciates a federal standard for the determination of what constitutes the first entry of judgment or the passing of sentence where it is manifest that the sole basis for the vacation and reentry of judgment was to repair the omission to make the statutory recommendation against deportation. [4] The interdependency of Accusation 85–60 and Indictment No. 27–59 is shown not only by the common factors of accused and victim, *corpus delicti*, and section of law violated but also by the reference in the record of conviction on Indictment 85–60 to Indictments Nos. 27–59 and 28–59 to the effect that these latter indictments were not dismissed until after the imposition of sentence on Accusation 85–60 and the making of the recommendation against deportation on March 30, 1961. It is concluded that the recommendation against deportation is not effective under the federal standard set forth in section 241(b) of the Immigration and Nationality Act.

The conviction of robbery committed on February 13, 1959 (Accusation No. 85–60), the conviction of grand larceny of a motor vehicle committed July 18, 1958 (Indictment No. 31–58), and the conviction for possession of a stolen motor vehicle committed July 17, 1958 (Indictment No. 30–58), support the deportation charge laid under section 241(a)(4). While under this view it is not necessary to consider whether the latter two convictions involved a single scheme, we believe we should discuss the finding of the special inquiry officer in this regard.

Indictment No. 31–58 in violation of N.J.S.A. 2A:119–2 charged the respondent with stealing the automobile of one W—H— in

---

[3] Article 1, paragraph 8, New Jersey Constitution, provides no person shall be held to answer for a criminal offense unless on presentment or indictment of a grand jury except in cases now prosecuted without indictment. N.J.S.A. 2A:152–1 defines indictment to include "accusation of crime"; it includes "inquisition," "presentment," "information," as well. N.J.R.R. 3:4–2(a) provides "a criminal offense punishable by death shall be prosecuted by indictment. Any other criminal offense shall be prosecuted by indictment, unless the defendant, after having been advised of his right to indictment, shall, in writing signed by him waive such right, in which case he may be tried on accusation."

[4] *United States ex rel. Piperkoff* v. *Esperdy,* 267 F.2d 72 (C.A. 2, 1959).

Bayonne, New Jersey, on July 18, 1958; and Indictment No. 30–58 charged possession of a stolen motor vehicle in violation of N.J.S.A. 2A:139–3 committed the day before, July 17, 1958, in the same city and involving the property of one R—S—. Convictions on both indictments occurred in the County Court of Hudson, Jersey City, New Jersey, on October 17, 1958, and the respondent was given concurrent sentences of indeterminate terms in the New Jersey State Reformatory, sentences were suspended and he was placed on 3 years' probation. The special inquiry officer has found alienage and that the crimes involve moral turpitude. He has, however, found that the Government has not borne the burden of establishing that the two crimes did not arise out of a single scheme of criminal misconduct.

The examining officer placed into evidence the records of conviction and attempted to question the respondent. However, the respondent declined to testify upon advice of counsel and the records of conviction, plus the refusal of respondent to testify, constitute the sole evidence to support the charge under section 241(a)(4) of the Immigration and Nationality Act.[5] The special inquiry officer in construing the records of conviction stated that they were as equally susceptible of an inference that the respondent might have been in the illegal business of stealing and disposing of stolen motor vehicles and thus that the two crimes under consideration were part and parcel of one scheme or plan of illegal business, as of an inference of two separated, unrelated and distinct crimes; and concluded that the test of substantial evidence was not satisfied by evidence which gives equal support to inconsistent inferences.

We believe that this construction taxes the imagination and is unsupported by the record. The records of conviction establish that the respondent had illegal possession of the stolen vehicle of one S— on July 17, 1958, and that on the next day, July 18, 1958, stole the auto of one H—. The normal inference to be drawn from different crimes committed at different times against different persons is that they were separate and distinct crimes and were not part of a common scheme or plan unless there is evidence to the contrary. It is concluded that the records of conviction establish a *prima facie* showing of deportability.

The case of *Chanan Din Khan* v. *Barber* [6] stated that while it is true that many separate offenses may be committed by an individual in furtherance of some subjective predilection amounting to a general scheme of criminality, to hold that a mere lurking propensity to com-

---

[5] Section 241(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(4)) provides for the deportation of an alien who has, subsequent to entry into the United States, been convicted of at least two crimes involving moral turpitude *not arising out of a single scheme of criminal misconduct.*

[6] 147 F. Supp. 771 (N.D. Cal., N.D., 1957).

mit certain kinds of offenses manifests a "single scheme" within the meaning of section 1251(a)(4) would be, in effect, to render nugatory a declared public policy to deport aliens who are convicted of two crimes involving moral turpitude; a more reasonable and rational interpretation of this language is that Congress contemplated nothing more than those situations where an alien's conviction is based on a multiple indictment charging him with separate crimes, which were committed by the doing of a single act or a series of simultaneous or closely related connected acts. The Court of Appeals affirmed, holding that fraudulent returns in two different years could, or could not, be one plan or scheme but that the case presented no facts to prove such a single scheme; and, *in the absence of all evidence to the contrary*, complete crimes committed on different dates or in different places are considered separate and different crimes and support separate charges.[7]

This reasoning was quoted with approval in *Wood* v. *Hoy*[8] in which the court, however, found that there *was* evidence to the contrary based upon the alien's testimony which overcame the *prima facie* case established solely by the record of conviction.[9] The court in *Wood* v. *Hoy* referred with approval to the case of *Jeronimo* v. *Murff*.[10] This case involved a multi-count indictment involving several larcenies and briberies covering a stated period; the court laid great stress on the concluding paragraph of the indictment which charged: "all of the acts and transactions alleged in each of the several counts in this indictment are connected together and constitute parts of a common scheme and plan"; and the grand jury found that all the acts and transactions alleged in the indictments were connected together. The court in *Jeronimo* distinguished the case from *Fitzgerald ex rel. Miceli* v. *Landon*[11] and *Chanan Din Khan* v. *Barber*[12] by pointing to the following evidentiary facts which convincingly established a single scheme in that case: the initial formulation of the same subsisting fundamental object and purpose; the utilization of precisely the same methods and procedures in each of a series of successive situations to accomplish the original objective; the continuously interacting relationship and

---

[7] *Chanan Din Khan* v. *Barber*, 253 F.2d 547 (C.A. 9, 1958).

[8] 266 F.2d 825 (C.A. 9, 1959).

[9] The court commented on the case of *Fitzgerald ex rel. Miceli* v. *Landon*, 238 F.2d 864 (C.A. 1, 1956), in which the court concluded it had no reason to believe that the petitioner was convicted of being lewd, wanton and lascivious solely on the basis of the one act of indecent assault charged in the first count; but criticized the implication in *Miceli* to the effect that the proviso is to be interpreted as "crimes arising out of a single *act* of criminal misconduct."

[10] 157 F. Supp. 808 (D.C., S.D.N.Y., 1957).

[11] 238 F.2d 864 (C.A. 1, 1956).

[12] 147 F. Supp. 771.

activities of the same persons who originated and launched the project; the victimizing of the same person through all of the acts which, in the aggregate, demonstrated the existence of a single criminal enterprise, project and undertaking, and found that the record conclusively established that the four larcenies upon which the proposed deportation was based arose out of a single continuing criminal enterprise. In the instant case there was no indication in the indictment of an allegation of a common scheme and plan nor were the same persons victimized, but two different vehicles were stolen from two different persons on different dates.

In the case of *Zito* v. *Moutal*,[13] the plaintiff was convicted on a 12-count indictment which charged conspiracy and 11 substantive violations of the Internal Revenue Act, in which the examining officer introduced into the evidence only a certified copy of the indictment, judgment and conviction and the alien rested without producing any evidence. The court followed the reasoning of *Jeronimo, supra*, because the only evidence, the record of conviction, failed to constitute substantial evidence because the indictment charged a continuing conspiracy, the offenses were of the same type, the victim was the same and the same defendants participated in the commission of the offenses. The court found the offenses had a common subject matter and that the object of each crime was the same. Again, the present case may be distinguished because the crimes were different and the victims were different and the record of conviction shows neither a common subject or a common objective.

*In Matter of C—*, 9—524 (Jan. 2, 1962), in which the respondent was convicted in a single trial of filing fraudulent tax returns for the years 1948 and 1949, the record of conviction constituting the only evidence when the respondent refused to testify at the deportation hearing, it was found that in the absence of probative evidence to the contrary, the record of conviction failing to show acts in furtherance of a common plan would suffice to establish a single scheme did not exist, and the Board held there was no probative evidence controverting the inference which flows from the commission of crimes a year apart. In the instant case, the record of conviction showing the commission of different crimes on different dates against different persons supports the charge in the absence of evidence to the contrary. The crimes here do not meet the single scheme test of commission pursuant to the formulation of overall plan to accomplish an original objective in each of a series of successive criminal projects. It is concluded that these two convictions do not comprise a single scheme. Deportation will be ordered upon that portion of the second lodged charge which is comprehended by the amended conclusion of law (2) below.

---

[13] 174 F. Supp. 531 (N.D. Ill., 1959).

621

The findings of fact and conclusion of law made by the special inquiry officer on November 13, 1961, are hereby adopted except that finding of fact (9) is amended to read:

(9) That the offenses for which the respondent was convicted under Accusation #85–60 and Indictments #30–58 and #31–58 did not arise out of a single scheme of criminal misconduct;

and the conclusion of law is amended to read:

(1) That the recommendation against deportation on March 30, 1961, was not effective under section 241(b) of the Immigration and Nationality Act;

(2) That the respondent is subject to deportation under section 241(a)(4) of the Immigration and Nationality Act in that he at any time after entry has been convicted of two or more crimes involving moral turpitude: robbery committed February 13, 1959, grand larceny committed July 18, 1958; and possession of a stolen motor vehicle committed July 17, 1958.

**ORDER:** It is ordered that the alien be deported to Poland pursuant to law on the following charge:

Section 241(a)(4) of the Immigration and Nationality Act in that at any time after entry he has been convicted of two or more crimes involving moral turpitude: robbery committed February 13, 1959, grand larceny committed July 18, 1958; and possession of a stolen motor vehicle committed July 17, 1958.

622